# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

MEDICAL DIAGNOSTIC LABORATORIES, )
LLC, )
                                                  Plaintiff, )
v. )    Case No. CIV-16-902-D
)
HEALTH CARE SERVICES CORP., )
a Mutual Legal Reserve Company d/b/a )
BLUE CROSS BLUE SHIELD OF )
OKLAHOMA, )
)
                                                  Defendant. )

## **O R D E R**

Before the Court is Defendant's Motion to Dismiss [Doc. No. 16] and Brief in Support [Doc. No. 17], filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has responded in opposition [Doc. No. 20], and Defendant has replied [Doc. No. 21].

## Background

Plaintiff brings suit alleging Defendant sent false and threatening response letters ("Response Letters")[1] to roughly fifty in-network medical providers ("Providers") intending to intimidate Providers from referring patient samples to Plaintiff for testing. Plaintiff alleges Defendant's Response Letters were defamatory and tortiously interfered with Plaintiff's prospective contractual relationships with Providers, other in-network providers, and patients. Plaintiff requests injunctive relief prohibiting Defendant from

---

[1] The Response Letters were replying to Providers' letters sent to Defendant recommending Plaintiff be approved as an in-network Oklahoma laboratory provider ("Recommendation Letters").

making any further false or defamatory assertions about Plaintiff and requiring Defendant to issue a retraction.

By its Motion, Defendant contends Plaintiff has failed to state a plausible claim for relief. Specifically, Defendant contends that (1) Plaintiff's tortious interference claim fails because Plaintiff did not plead the required elements; (2) Plaintiff's defamation claim fails because Plaintiff did not identify any actionable statements by Defendant; and (3) Plaintiff's request for injunctive relief is unconstitutionally broad and vague, and therefore, seeks to unlawfully restrict Defendant's freedom of speech, and is otherwise infirm.

**Standard**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility" standard announced in *Twombly* and *Iqbal* is not considered a "heightened" standard of pleading, but rather a "refined standard," which the Tenth Circuit has defined as "refer[ring] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff [has] not nudged [its] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kan. Penn Gaming, LLC. v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

2

The Tenth Circuit has further noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* (quoting *Kan. Penn Gaming*, 656 F.3d at 1215). "Thus . . . the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected,*[2]* and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id.* (quoting *Robbins*, 519 F.3d at 1247). Although it remains true that "[s]pecific facts are not necessary [and] the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555), "the complaint must still provide enough factual allegations for a court to infer potential victory." *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (internal quotations omitted).[3]

## Discussion

In this case, Plaintiff submits exhibits and includes by reference outside materials in support of its claims, and both parties reference those exhibits and other materials in their briefs. *See* Compl. [Doc. No. 1] at 5-6; Ex. 1 [Doc. No. 1-1]; Ex. 2 [Doc. No. 1-2]. Because Plaintiff's claims rely on the exhibits and other materials, it is proper to consider

---

[2] In deciding *Twombly* and *Iqbal*, there was no indication the Supreme Court "intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* at 1191 (citing *Iqbal*, 556 U.S. at 678).

[3] Several of Plaintiff's allegations are based "upon information and belief." *See, e.g.*, Compl. [Doc. No. 1] at 5, 7, 9, 11. *Twombly* does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant or where the belief is based on facts that make the inference of culpability plausible. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

them as part of the Complaint without converting Defendant's Motion to one for summary judgment. *See Richardson v. Cigna Corp.*, No. CIV-10-1238-D, 2011 WL 2443684, at *2 (W.D. Okla. June 14, 2011) (unreported opinion) ("Where documents are central to a plaintiff's claims, they may be properly considered in connection with a motion to dismiss, and conversion to summary judgment is not required.") (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Accordingly, the Court will consider Defendant's Motion under the standards applicable to a Rule 12(b)(6) motion.

To summarize, Plaintiff's Complaint alleges the following:[4]

- Plaintiff is the only clinical laboratory in the United States that provides specialized laboratory testing services designed to identify the presence of certain types of gynecological and sexually transmitted diseases and disorders in female patients, including (1) a test designed to determine whether a patient has Gonorrhea and if so, whether the patient's particular strain of the disease is resistant to certain antibiotic drugs, (2) unique reflex antibiotic resistance and susceptibility testing of *Trichomonas Vaginalis*, the most prevalent curable sexually transmitted disease in the world, and (3) unique diagnostic and treatment options for *Bacterial Vaginosis*, the imbalance of vaginal microflora;
- Defendant maintains a network of healthcare providers with whom it enters into provider agreements allowing Defendant to pay discounted rates for services provided to patients insured through Defendant's plan. In this way, Defendant

---

[4] For purposes of this Order, only necessary allegations are included here of the Complaint's seventy-three numbered paragraphs.

- controls approximately 61% of the private health care market in Oklahoma and currently does not consider Plaintiff a preferred in-network laboratory;
- Based upon their experiences using Plaintiff's unique testing services, Providers recently wrote Recommendation Letters to Defendant on behalf of Plaintiff;
- Defendant's Response Letters falsely stated that Defendant's current in-network laboratories are able to provide the specialized testing Plaintiff claims to be unique to its laboratories;
- The two in-network laboratories referred to in the Response Letters do not and cannot provide the unique proprietary tests offered by Plaintiff;
- The Response Letters also falsely claim they were sent as part of Defendant's periodic review of "out-of-network utilization," but go on to reference the Recommendation Letters sent by Providers to Defendant on behalf of Plaintiff;
- Further, the Response Letters threaten Providers with termination of in-network status if they continue to refer sample specimens for testing with Plaintiff;[5]
- Defendant's Response Letters were intended to intimidate Providers because, as the largest private health insurer in Oklahoma, Defendant controls a significant amount of Providers' volume of business;
- Plaintiff wrote Defendant a cease and desist letter, to which Defendant did not reply and has since refused to retract the alleged defamatory statements;

---

[5] Plaintiff additionally alleges that at least one Provider was contacted twice via phone by Defendant and advised to stop sending specimens for testing to Plaintiff or face possible termination of its provider agreement.

- The Recommendation Letters deprive Plaintiff of public confidence and injure Plaintiff in respect to its office, profession, trade or business, by imputing to Plaintiff general disqualification in those respects which the office or other occupation peculiarly requires, and by imputing something with reference to Plaintiff's office, profession, trade or business that has a natural tendency to lessen its profits;

- Because of Defendant's allegedly defamatory statements, Plaintiff has lost physician referrals, and has had to otherwise find accommodations to address Provider concerns about Defendant's Response Letters; and

- Defendant intentionally interfered with Plaintiff's prospective contractual relationships with Providers, other member-providers, and member-patients by inducing or otherwise causing the aforementioned third persons not to enter into or continue prospective relationships and by preventing Plaintiff from acquiring prospective relationships.

*See* Compl. [Doc. No. 1] at 3-15.

**Tortious Interference**

To prevail on a claim of tortious interference with prospective economic advantage, Plaintiff must show: "[1] the existence of a valid business relationship or expectancy; [2] knowledge of the relationship or expectancy on the part of the interferer; [3] an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [4] resultant damage to the party whose relationship has been disrupted." *Batton v. Mashburn*, No. CIV-14-651-R, 2015 WL 461598, at *9 (W.D. Okla. Feb. 3, 2015)

(unreported opinion) (quoting *Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995)). Defendant argues that Plaintiff failed to state a plausible claim for tortious interference because Plaintiff did not allege: (1) facts regarding the prospective contractual relationships alleged in the Complaint; (2) any valid business expectancy; (3) intentional or improper interference by Defendant; or (4) damages resulting from Defendant's alleged actions.

The Court finds Plaintiff's allegations of tortious interference insufficient to satisfy the 12(b)(6) standard. Not only does the Complaint fail to demonstrate the presence of any contractual relationship between Plaintiff and Providers, it also fails to demonstrate that Defendant, by Response Letters or otherwise, interfered with any valid business relationship or expectancy[6] Plaintiff may have maintained toward Providers. A review of the exhibits and other materials relied upon by the parties demonstrates a valid contractual relationship only between Defendant and Providers. Plaintiff is a stranger to this contract. *See Bristow Endeavor Healthcare, LLC v. Blue Cross*, No. 16-CV-57-CVE-PJC, 2016 WL 3199520, slip op. at 9 (N.D. Okla. June 8, 2016) (holding Defendant's "refusal to add [Plaintiff] as an in-network provider . . . . [does not rise to the level of a] tortious interference claim, because [Defendant] [i]s not a third-party to the contract," and Defendant's "decision not to contract with [Plaintiff] is [not] inherently improper or unjustified").

---

[6] Plaintiff may very well have maintained a hope of increased usage of its laboratory services by Providers and patients alike – hence its desire to become one of Defendant's in-network laboratories, but the Court finds such hope falls short of the expectancy required for a successful tortious interference claim.

7

Further, it is within the confines of the contractual relationship that Defendant's communication to Providers cited an obligation to seek pre-approval before sending specimens to any out-of-network laboratory, including Plaintiff's. Nothing before the Court suggests that Providers are prohibited from using Plaintiff's laboratory services if Providers go through the proper pre-authorization procedure, or their patients consent to paying for Plaintiff's services without seeking insurance reimbursement. *See* Def.'s Mot. [Doc. No. 17] at 3 ("[I]f there is no in-network provider that can provide the necessary services, a physician may refer [an in-network patient] to an out-of-network provider by obtaining preauthorization from [Defendant]."); *see also Bristow Endeavor Healthcare, LLC*, 2016 WL 3199520, slip op. at 9 (holding Plaintiff's allegations do "not give rise to liability for tortious interference with business relations[hips] under Oklahoma law" because "[p]atients [can] still seek treatment from [Plaintiff]"). Accordingly, Defendant's Motion on this issue is granted.

**<u>Defamation</u>**

A viable claim of defamation must assert:

(1) a false and defamatory statement concerning [Plaintiff]; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication.

*Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1349 (W.D. Okla. 2015) (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003)). Defendant contends that Plaintiff failed to allege any statement that is both false

and defamatory, and therefore, its claim for defamation must be dismissed. The Court agrees.

Although at this stage in the litigation, a claim of defamation "shall be sufficient [if it] state[s] generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and . . . allege[s] any general or special damage caused thereby," OKLA. STAT. tit. 12, § 1444.1 (2017), the allegations must *plausibly* assert a defamatory statement, and here they do not. *See* Pl.'s Resp. [Doc. No. 20] at 18 (identifying the alleged defamatory statement as, "Defendant has verified that our In-Network Laboratories are able to provide the specific services as outlined in your letters"); *see also Payne v. WS Servs.*, LLC, 216 F. Supp. 3d 1304, 1320 (W.D. Okla. 2016) ("Under Oklahoma law, '[a] communication is defamatory [only] if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'") (quoting *Wilson v. City of Tulsa*, 91 P.3d 673, 680 (Okla. Civ. App. 2004). That other laboratories can provide the same services as Plaintiff does not plausibly lower Plaintiff in the estimation of the community or deter others from associating or dealing with Plaintiff. Accordingly, Defendant's Motion on this issue is also granted.

**Injunctive/Equitable Relief**

A successful request for a permanent injunction will demonstrate: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). Defendant contends that: (1) an

adequate remedy for defamation already exists at law, and therefore, injunctive relief is unavailable; (2) Plaintiff failed to establish a likelihood of success on the merits; and (3) Plaintiff's claim is unconstitutionally vague and broad.

A permanent injunction requires success on the merits. If the underlying claims are infirm, which the Court has stated to be the case, the request for an injunction fails as well. Accordingly, Defendant's Motion on this issue is granted.

**Conclusion**

As stated above, the Court has found that Plaintiff's Complaint fails to allege plausible claims. Therefore, Defendant's Motion to Dismiss [Doc. No. 16] is GRANTED as set forth herein, and Plaintiff's Complaint is dismissed without prejudice. Plaintiff has requested leave to amend, *see* Pl.'s Resp. [Doc. No. 20] at 19 n.12, 23 n.13, and any such amended pleading shall be filed within fourteen (14) days of the date of this Order.

IT IS SO ORDERED this 10th day of July, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE